263 So.2d 579 (1972)
William KORASH et al., Petitioners,
v.
Dorothy M. MILLS, As Tax Collector of Volusia County, Florida, et al., Respondents.
No. 41448.
Supreme Court of Florida.
June 7, 1972.
Rehearing Denied July 19, 1972.
Melvin Orfinger, Ormond Beach, for petitioners.
William M. Barr, of Raymond, Wilson, Karl, Conway & Barr, and Alfred E. Hawkins, Daytona Beach, for respondents.
DEKLE, Justice.
The First District Court of Appeal certifies to us without an articulated question its decision at 249 So.2d 765 (Fla.App. 1st 1971), as passing upon a question of great public interest, vesting jurisdiction under Fla. Const. art. V, § 4(2), F.S.A.; F.A.R. 4.5, subd. c (6) (2), 32 F.S.A.
Petitioners are owners of oceanfront property in the City of Daytona Beach which in its vacant and unimproved state had an assessed valuation for tax purposes *580 of $177,330.00 for the year 1966 which was paid without objection.
During 1966, and prior to January 1, 1967, the owners (petitioners) constructed a motel on the land. The county tax assessor (a respondent) assessed the property for 1967 in the same amount as in 1966 ($177,330). Then in 1968 the assessment was increased to $818,470. This was billed and was paid without objection. In addition in 1968, the assessor, not having increased the assessment in 1967 (when the completed motel was in fact on the property) assessed separately on the 1968 tax roll and rendered a separate tax bill in 1968 for the difference of $641,140 as the value of the motel improvement on the land for the year 1967. This was separately noted on the 1968 tax roll and billed under the identical legal description and was noted as "1967 IMPROV VALUE". The landowner of course objects to such late additional assessment. The learned chancellor agreed but the First District reversed and we now have the cause for review as certified.
The assessor explains his belated action by pointing out that in 1967 the property record card on which the valuation of the bare land was recorded became separated from a separate card on which the valuation of the new motel improvement was being noted for the first time; that the two cards were not attached in accordance with normal office procedure to reflect a composite assessed value of both land and improvements for the levy of taxes and that as a result of this "clerical" error only the value of the bare land was entered upon the 1967 tax roll although the new Kings Inn Motel building thereon was in fact duly and fairly assessed at the proper time; that he did not discover the error until he was in the process of preparing his tax rolls for the next year 1968 when he found what had happened for 1967. He proceeded promptly with what is now termed a back assessment for the increased amount for 1967 in 1968. The 1968 assessment of $817,470 was paid. The owner refused to pay as "void" the 1967 "back assessment" and sought this judicial determination as to its validity.
The able chancellor in a well written final judgment found with the taxpayer upon a line of reasoning based principally on the definition of "real property" as defined for tax purposes in then Fla. Stat. § 192.031 (formerly § 192.02 and now § 192.001(12)), F.S.A., which states that it is to be "construed to include lands and all buildings, fixtures and other improvements thereon." The eminent jurist then reasons that there must be a single assessment lumping together the raw land and improvements on it and pointing out that they cannot be assessed separately as land and also as "improvements"; that this prevents the assessment separately here of the motel and that the late or back assessment of the motel separately "was an attempt by the tax assessor to increase the valuation of the Plaintiffs' property for 1967, which is illegal and void." Such position is aside from the argument which we shall also discuss as to whether or not there can be a "back assessment" at all, whether of the building, land or both.
This brings us to the crossroads. It is here, we feel, that the chancellor chose the wrong road. He terms this an "increase in the valuation of the Plaintiffs' property for 1967." If it were only for the purpose of an increase in the valuation of the total property then we would agree with the chancellor, for it has been consistently so held.[1] It will be seen however that in these prior cases the increase has been an attempted increase in amount only (after an assessment of the improvement for a total lesser amount) and not instances *581 where the entire improvement was skipped and failed to be noted at all for taxation because of error or oversight as in the present case.
Markham v. Friedland, 245 So.2d 645 (Fla.App. 4th 1971), involved the unusual circumstance of a difference in judgment by successive tax assessors, one placing a partially completed structure on the tax roll as "substantially complete" and then "after very careful consideration" striking it; the other belatedly in 1969 (after certification) trying to add the improvement as "85% complete." This falls within the "judgment exercised" theory described sub judice, resulting in a rare instance of precluding the back assessment of an "omitted improvement" because it really had not escaped consideration. We do not see this result as inconsistent with our view.
The back assessment sub judice is not viewed merely as "clerical" under Fla. Stat. § 192.21 (now § 197.011), F.S.A., for it is more serious than that. The types of clerical corrections under this statute are rather limited.[2] Neither is it a total escape of taxation but it is a partial one under § 193.23 (now § 193.092), F.S.A., and is within that statute's purview for "re-capture."
We must keep in mind the distinction between changes and "miscalculations" by the assessor which "up" the amount previously assessed after tax roll certification, and the situation here where there has been no billing at all on the improvement (or it could be a separate, "overlooked" parcel of land) which has been completely excluded from the tax roll. This is obviously a mistake, error, oversight, which cannot be prejudicial to the taxpayer as in those cases where a change in judgment by the tax assessor was involved, belatedly increasing the valuation which had in fact earlier been assigned and entered on the tax roll. In those cases the assessor had initially assessed all of the taxpayer's property including both land and improvements and in each of the cases the attempt was to increase the valuation of property already included (or considered and rejected as in Friedland) in the assessment.[3]
The distinction is clear. The "back assessment" here was in fact the initial and original assessment never theretofore assigned to the principal value of the property, a new $650,000.00 motel. There has been no reevaluation, no recalculation and no reassessment of the property in this sense. It simply turns out to be a separate assessment of land and buildings which, while not intended to be the usual manner of assessment, was the result of oversight and was without any change in the basic valuation made by the assessor but "lost" on a separate card in 1967.
It is the judgment of the assessor that is involved: if he seeks to change his judgment on a valuation which properly includes all of the "real property" as defined in the statute § 192.001(12), after certification of the tax roll, a change "reevaluating" the amount will not be allowed, in accordance with our previous holdings.[4] If there is no new judgment being exercised, and property not theretofore included is just late in being enrolled and billed, as in the circumstances here, it is a proper assessment and is payable under § 193.092 as "escaped" property. (Just be glad there is no late charge!) The statute was provided as a means to insure that the tax roll speaks the truth and truly reflects tax assessments on an equal basis.
Thus we have here an instance where the principal value of the property has indeed "escaped" taxation which is fairly within the contemplation of Fla. Stat. § *582 193.092, F.S.A. It would be an extremely inequitable and unjust result for a court of equity to grant to a knowing taxpayer an outright "windfall" of $25,000 which was the additional tax he admittedly escaped for the year in question.
Justice may be "blind" but it is not stupid. Impartial fairness and equality is what the blindfold represents. We cannot condone a taxpayer's blithely asserting refined definitions of single assessments and separate billings when he so clearly knew that there was no tax bill whatever for the improvement of a $650,000 motel. The 1967 assessment and tax billed was precisely the same as in 1966 when the land was bare. Any taxpayer would realize that he has "escaped" a new substantial tax on a new building which he knew would be forthcoming. In this instance Petitioner Madorsky is described as one of the leading and most successful motel operators in Daytona Beach, a licensed real estate broker and involved in the operation of large motel properties and in the payment of taxes thereon. There is no inequity  except to petitioners' taxpaying fellow "sufferers" if allowed to prevail.
We agree that single assessments are the usual case and should be employed[5] but cannot concur that the definition of real property to include both land and improvements will avoid the payment of a just and proper assessment which was simply not billed in the correct year so far as the improvements are concerned. We do not always have the linking of land and improvements. In the instance of the labyrinthian condominiums in Florida we know that there is now allowed separate ownership and taxation.[6] Separate ownership of different estates and interests in land and improvements were recognized even at an earlier day.[7] Instances such as the error in the present case and resulting separate assessments are rare; they are more nearly cases of de minimis non curat lex.
Our holding is consistent with the basic purpose of taxation: that all taxpayers share in proportion to their assessments, the support of their government and the protection and services afforded to their property and to themselves, and that none bears an added or unfair burden by reason of other taxpayers not paying their just share.[8]
We are mindful of the historical cutoff point of certification of tax roll which gives stability to taxation and of the enunciations in Okeelanta, supra, and similar cases on this subject, but we distinguish in the instance here where the "escape" is so clear and ascertainable, and those cases where increases in value attempted after the improvements had at least in part been considered and contemplated, were not allowed. We adhere to the decisions in those situations because of the inherent evils which would allow belated adjustments upward and downward, creating instability and causing inequitable future variances between buyers and sellers regarding tax prorations and obligations. Here, it is perfectly apparent to any buyer or seller that the exact tax in 1967 is that on the bare land in 1966 and that they must provide between them for the future correction of the tax which would be inevitably forthcoming, in the firm knowledge of "the certainty of death and taxes!" Here there has never been any change in the tax assessor's judgment. He made the same, proper assessment (the amount is not challenged) of the new motel in 1967 and it was simply left off the roll. Plaintiffs retained ownership of the motel until they sold it in 1970.
*583 A balanced scale of justice as the goal of our tax statutes is reflected by the corollary of § 193.092 taxing "escaped" property, and Fla. Stat. § 193.38 (1967),[9] which provides in the event of double assessment that the tax assessor "shall collect only the tax justly due thereon." The clear objective is thus spelled out within the range of the applicable statutes to the end that a single but full, just tax be paid by each taxpayer. Petitioners are no different.
Equitable estoppel would protect the taxpayer where there may be inequitable circumstances.[10] There was not such a reliance by the taxpayer here as would invoke equitable estoppel.
Any arbitrary, general language contrary to the views set forth in this opinion, which is contained in the prior decisions on this subject, is herewith overruled and superseded by the views expressed herein.
The First District is correct. Its certification is answered as herein set forth. Certiorari is
Discharged.
ROBERTS, C.J., and ERVIN and CARLTON, JJ., concur.
McCAIN, J., dissents.
NOTES
[1] Okeelanta Sugar Refinery, Inc. v. Maxwell, 183 So.2d 567 (Fla.App.4th 1966); Markham v. Friedland, 245 So.2d 645 (Fla.App.4th 1971); Homer v. Connecticut General Life Ins. Co., 211 So.2d 250 (Fla.App.3d 1968); Dade County v. Budd, 219 So.2d 63 (Fla.App.3d 1969); and Allen v. Dickinson, 223 So.2d 310 (Fla. 1969) (fact stated in 2d Dist. Opinion at 215 So.2d 747, 749 (1968)).
[2] Allen v. Dickinson, 223 So.2d 310 (Fla. 1969).
[3] See footnote 1. (This analysis thus distinguishes the author's seemingly contrary holding as a chancellor in Budd  there an increase of existing improvement assessment; here a complete omission reached for the first time under § 193.092.)
[4] See footnote 1.
[5] Yowell v. Rogers, 128 Fla. 881, 175 So. 772 (1937).
[6] Fla. Stat. §§ 711.19, 711.20, F.S.A.
[7] Walters v. Sheffield, 75 Fla. 505, 78 So. 539 (1918); 25 Fla.Jur. Property, § 8 (p. 510); A.G.Op. 061-190, 12-11-61; Fla. Stat. § 691.03(2), F.S.A.
[8] Roberts v. American Nat'l Bank, 94 Fla. 427, 115 So. 261, 265 (1927); Green v. Wisner, 119 So.2d 814 (Fla.App.2nd 1960).
[9] Now § 197.035.
[10] Coppock v. Blount, 145 So.2d 279 (Fla. App.3d 1962). City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965).