SALTER, J.
These are two consolidated appeals from Monroe County Circuit Court judgments regarding Paul Mitchell’s entitlement to homestead property tax exemptions for 1999 through 2006 (our Case No. 3D09-1924) and for 2007 (our Case No. 3D10-979). We reverse a final summary judgment in Mitchell’s favor reinstating his homestead exemption for tax years 1999 through 2006 and remand it for further proceedings. We affirm the final judgment after trial regarding the revocation of the exemption for tax year 2007.

Background

Mitchell’s family has owned the Key West residential property at the center of these cases since 1928. In 1991, Mitchell moved to the property. He applied for, and was granted, the property tax homestead exemption for the residence in 1996.
In 1999, Mitchell bought property on Sugarloaf Key, about 18 miles away from the Key West residence. In 2005, in an effort to help family members, Mitchell changed his Florida driver’s license and voter’s registration to the Sugarloaf Key address.[1] On the change of address card *1154 for voter registration, Mitchell listed his Key West residence as the “address of homestead exemption property.” In 2007, Mitchell changed his driver’s license and voter registration addresses back to that of the Key West residence.
In mid-2007, the Monroe County property appraiser received an anonymous complaint that the Key West property was vacant and the property had been receiving the homestead exemption. Upon investigation of the properties, the public records, utility bills, and other information, the appraiser notified Mitchell that the homestead exemption was revoked for 2007. A later notice advised Mitchell that the appraiser had determined that Mitchell was not entitled to the homestead exemption for any of the years 1999 (the year he bought the Sugarloaf residence) through 2006. In 2008, Mitchell filed a lawsuit seeking a declaratory judgment that he was entitled to the homestead exemption for tax years 1999 through 2007. The lawsuit also sought the removal of a tax lien filed against him by the appraiser under section 196.161, Florida Statutes (2006), for the unpaid property tax, penalties, and interest (totaling approximately $28,000) over the eight years, 1999 through 2006.
The trial court granted a final summary judgment in favor of Mitchell as to those eight years, and revoked the recorded tax lien as sought in the complaint. After a non-jury trial, the court concluded that the appraiser had proven that Mitchell was not entitled to the homestead exemption on the Key West property for tax year 2007. These appeals followed.
Analysis — 2007 Tax Year (Case No. 3D10-979)
The intention to establish a permanent residence in Florida “is a factual determination to be made, in the first instance, by the property appraiser.”[2] The property appraiser determined, after a diligent investigation, that the residence on Sugarloaf Key was Mitchell’s primary and permanent residence as of January 1, 2007, such that Mitchell was not eligible for the homestead exemption for 2007.
At trial, the court heard evidence regarding the Mitchells’ occupancy and use of the Sugarloaf Key property, the indicia of vacancy and low utility usage at the Key West address, intention as expressed in the driver’s license and voter registration records, and other objective criteria. The court applied the correct law and entered extensive findings of fact. As the findings are based on substantial and competent evidence, we affirm the final judgment regarding Mitchell’s lack of qualification for the homestead exemption on the Key West property for 2007. CFI Sales & Mktg., Ltd. v. Florida Marlins Baseball, Ltd., 837 So.2d 423 (Fla. 3d DCA 2002).
Analysis — 1999-2006 Tax Years (Case No. 3D09-1924)
The trial court entered a final summary judgment in favor of Mitchell regarding the property appraiser’s revocation of Mitchell’s homestead exemption for years 1999 through 2006. The final summary judgment did not address “[Mitchell’s] claim that sections 196.011, 196.161, and 193.155 are unconstitutional,” though Mitchell has attempted to renew that argument here. Rather, the final summary judgment concluded that the appraiser’s revocation of the homestead exemption is a *1155 “change in judgment” that may not be retroactively applied following the close of a tax year, relying principally on Underhill v. Edwards, 400 So.2d 129 (Fla. 5th DCA 1981), and Korash v. Mills, 263 So.2d 579 (Fla.1972).
Korash distinguished a permissible basis for a “back assessment” by the property appraiser (the erroneous omission of an oceanfront motel from taxation altogether) from an impermissible basis (a “change in judgment” such as a change in valuation after the certification of the tax roll for the year). Underhill applied this principle to the retroactive denial of an exemption from property tax:
The determination that a parcel of property is exempt is as much á part of the assessment process as is the determination of its taxable value, and the judgment of the assessor must be applied in reaching that conclusion. We hold, therefore, that a determination in 1977 that the property should not have been exempted in 1976 is a change in judgment and is prohibited under the cited cases.
Underhill, 400 So.2d at 132.
The exemption at issue in Underhill was a charitable-use exemption, not the homestead property tax exemption. Retroactive revocation of the homestead exemption (for up to ten prior years) is the subject of an express legislative enactment, section 196.161, and that provision is not subject to the “change in judgment” rule. Were it otherwise, section 196.161 could never be given effect for any prior year, much less ten prior years, after a tax roll has been certified.
The legislature has imposed a series of requirements for eligibility for the homestead tax exemption and a mechanism for recovering the tax savings (plus interest and a penalty) realized by a property owner not actually entitled to claim the exemption. The constitutionality of such a mechanism (as applied) was thoroughly addressed in Haddock v. Carmody, 1 So.3d 1133 (Fla. 1st DCA 2009). In that case, a property owner claimed and received the homestead tax exemption for a condominium that was subject to a rental program. Under section 196.061, Florida Statutes (2005), the rental of an entire dwelling claimed to be a homestead “shall constitute the abandonment of said dwelling as a homestead.” On that basis, the property tax appraiser notified the owner that the exemptions for three prior years were revoked.
The First District reversed the trial court’s determination of unconstitutionality as applied, holding that the Florida Constitution expressly conditions eligibility for the exemption “upon establishment of the right in accordance with the manner prescribed by law.” Id. at 1136 (citation omitted). The court noted at the outset that “statutes involving tax exemptions are strictly construed against the taxpayer.” Id. at 1137. For the same reasons, we find section 196.161 constitutional and enforceable as applied in this case.[3]
That said, the trial court correctly observed that the revocation statute seems unfair: (a) it is not reciprocal, and (b) Mitchell is thus unable to receive the benefit of an exemption (the homestead tax exemption on the Sugarloaf Key property) to which he concededly would have been entitled had he not claimed the exemption *1156 on the Key West home.[4] This is so because a taxpayer is barred by sections 194.171(2) and (6), Florida Statutes (2010), from claiming the homestead tax exemption for prior years sixty days after certification of the tax roll or rendition of a value adjustment board decision. If a property owner inadvertently fails to claim a homestead tax exemption for prior years for which he or she is demonstrably entitled to claim the exemption, after that deadline the property owner has no remedy. But if the property appraiser delays in contesting a claim of exemption, there is no equivalent bar. The property appraiser has a ten-year clawback right even after the sixty-day deadline has elapsed.
Nowhere is it written, however, that the legislature must enact reciprocal rules as they relate to exemptions. The remedy for the lack of reciprocity lies with the legislature, not the courts. For these reasons, the final summary judgment in favor of Mitchell for tax years 1999-2006 is reversed, and the case is remanded to the trial court for fact-finding regarding Mitchell’s eligibility for the exemption during those years.

Conclusion

In Case No. 3D10-979, the final judgment in favor of the Monroe County property appraiser and director of the Florida Department of Revenue regarding tax year 2007 is affirmed. In Case No. 3D09-1924, the summary final judgment in favor of Mr. Mitchell regarding tax years 1999 through 2006 is reversed and remanded to the trial court for further proceedings consistent with this opinion.

. The trial testimony established that Mitchell and his wife hoped to register two minor children of a relative in the school on Sugar-loaf Key, and to provide a more suitable atmosphere for those children than in the “honky-tonk atmosphere of bars and other adult oriented establishments” near Mitchell's Key West residence. To facilitate that, he *1154 followed advice that he should change the address on his driver's license and voter’s registration card to the address of his Sugar-loaf Key home.

. § 196.015, Fla. Stat. (2007).

. Mitchell’s "Tipsy Coachman” and due process arguments are also unavailing. The Tipsy Coachman doctrine does not apply to grounds not raised in a motion for summary judgment, and the circuit court afforded Mitchell a de novo opportunity to seek a remedy and to be heard.

. However, one benefit of keeping the homestead exemption on the Key West home (rather than claiming it on the Sugarloaf Key residence) is in the record. The "Save Our Homes” assessed value cap, Art. VII, § 4(d)(1), Fla. Const., provided a greater value differential and savings on the Key West home. The cautionary lessons in this case are that (1) a property tax savings is not a factor affecting "intention to establish a permanent residence” under section 196.015, and (2) if the assessor prevails in a proceeding to revoke the exemption for past years, the property tax exemption cannot then be claimed retroactively for a different Florida residence that actually may have been the taxpayer’s primary residence during those prior years.