# Third District Court of Appeal

## State of Florida

Opinion filed June 28, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2432
Lower Tribunal No. 17-95-P
_____

**Scott P. Russell, etc.,**
Appellant/Cross-Appellee,

vs.

**James Hassett, et al.,**
Appellees/Cross-Appellant/Cross-Appellee.

An Appeal from the Circuit Court for Monroe County, Luis Garcia, Judge.

Dent & McClain, Chartered, and John C. Dent, Jr., and Jennifer A. McClain (Sarasota), for appellant/cross-appellee.

Gus H. Crowell, P.A., and Gus H. Crowell; Steven M. Goldsmith (Boca Raton), for appellee/cross-appellant James A. Hassett; Ashley Moody, Attorney General, and Timothy E. Dennis, Chief Assistant Attorney General (Tallahassee), for appellee/cross-appellee Jim Zingale.

Before SCALES, MILLER and BOKOR, JJ.

SCALES, J.

Challenged in this homestead exemption revocation case is a December 14, 2021 final judgment, where the trial court: (i) upheld appellant/cross-appellee Monroe County Property Appraiser Scott Russell's ("Property Appraiser") determination that the taxpayer, appellee/cross-appellant James A. Hassett ("Hassett"), was not entitled to the homestead exemption that Hassett had obtained in tax year 2007; (ii) upheld the Property Appraiser's revocation of the homestead exemption for tax years 2008 through 2015, determining that, notwithstanding Hassett's reliance on Monroe County's system of automatic homestead exemption renewals, Hassett was precluded from challenging the Property Appraiser's revocation for those tax years; and (iii) determined that, in calculating the tax lien owed by Hassett for the tax years 2008 through 2015, Florida's constitutional ten percent annual assessment limitation[1] (the "10% Assessment Limitation")

---

[1] Article VII, section 4(g) of the Florida Constitution provides in relevant part, as follows:

> For all levies other than school district levies, assessment of residential real property . . . which contains nine units or fewer and which is not subject to assessment limitations set forth in subsections (a) through (d) shall change only as provided in this subsection. . . . Assessments subject to this subsection shall be changed annually on the date of assessment provided by law; but those changes in assessments shall not exceed ten percent (10%) of the assessments for the prior year.

and its statutory counterpart, section 193.1554 of the Florida Statutes,[2] are applied to limit the assessed value of Hassett's property.

The Property Appraiser appeals the trial court's determination that, in calculating the tax lien, the 10% Assessment Limitation applies; and, in his cross appeal, Hassett, joined by Jim Zingale, the Executive Director of the Florida Department of Revenue ("the Department"), appeals the trial court's upholding the revocation of the exemption in tax years 2008 through 2015, without affording Hassett the opportunity to challenge those years' revocations. Hassett also appeals the trial court's upholding of the Property Appraiser's revocation of Hassett's homestead exemption for tax year 2007.

We affirm the trial court's upholding of the homestead exemption revocation for tax year 2007, and the trial court's determination that the tax lien must be recalculated to apply the 10% Assessment Limitation. With respect to the revocation of the homestead exemption between 2008 and 2015, we reverse and remand for a new trial at which Hassett will have the

Art. VII, § 4(g)(1), Fla. Const.

[2] In relevant part, this statute reads as follows: "Beginning in the year following the year the nonhomestead residential property becomes eligible for assessment pursuant to this section, the property shall be reassessed annually on January 1. Any change resulting from such reassessment may not exceed 10 percent of the assessed value of the property for the prior year." § 193.1554(3), Fla. Stat. (2017).

burden to establish that he was entitled to the homestead exemption post-2007.

**I. Relevant Background**

A. <u>Introduction – the Homestead Application and Automatic Renewals of Hassett's Homestead Exemption</u>

In 2003, Hassett purchased a home in the Ocean Reef Club neighborhood of Key Largo, Monroe County (the "subject property"). In 2007, he applied for and received a homestead exemption on the subject property. In 2011, after a divorce, Hassett became its sole owner, later transferring ownership into a trust. On his 2007 application for homestead exemption, Hassett claimed that the subject property became his permanent residence on September 1, 2006. When he filed his 2007 homestead exemption application, Hassett allegedly showed the Property Appraiser's Office personal documents (e.g., driver's license, voter registration card, utility bills, banking information) that would indicate homestead eligibility.

Generally, an application for homestead exemption must be filed annually, no later than March 1 of each tax year. <u>See</u> § 196.011(1)(a), Fla. Stat. (2017). Section 196.011(9), though, expressly permits a county, at the request of its property appraiser, to implement an automatic annual homestead exemption process, whereby the annual application requirement

4

is waived once the taxpayer has filed an initial exemption application, and that initial exemption has been granted. See § 196.011(9)(a), Fla. Stat. (2017). Monroe County, at the request of the Property Appraiser, implemented this automatic homestead exemption process, and Hassett availed himself of it, so that, after his 2007 exemption application, and the Property Appraiser's granting of same, Hassett did not thereafter file annual exemption applications. The Property Appraiser, pursuant to section 196.011(9)(a), automatically renewed Hassett's homestead exemption for tax years 2008 through 2015.

B. The Hassett Family's Residency of the Subject Property as of January 1, 2007

In 2003, when Hassett and his then wife purchased the subject property, they and their two minor children were residents of Illinois. Hassett was an executive of an international accounting firm. In 2006, Hassett sold his Illinois home and purchased a new home in Cincinnati, Ohio. His family moved to Cincinnati. This move to Cincinnati coincided with Hassett becoming his firm's Far East Managing Director, which required him to move to Hong Kong and to commute between Hong Kong and Cincinnati. Hassett's son and daughter were enrolled in school in Cincinnati for the 2006-07 school year. In the 2007-08 school year, Hassett's son remained in

the Cincinnati school until his withdrawal in February 2008, in order to move to Hong Kong. Hassett's daughter and wife moved to Hong Kong at this time as well, though his daughter continued to attend the Cincinnati school virtually through the end of the 2007-08 school year. Later in 2008, Hassett sold the Cincinnati home.

On January 1, 2007, the date Hassett was required to show permanent residency in Florida to qualify for a homestead exemption,[3] Hassett was residing in Hong Kong and his immediate family was residing in Cincinnati. His bank records show little travel to Florida during this time and his Ocean Reef Club transactions show minimal activity in 2007.

As part of his dissolution of marriage proceedings, Hassett, in 2010, executed a sworn affidavit. In this affidavit, Hassett swore under oath that he had "no connection with Florida save and except we have a holiday home there." He elaborated on this statement by describing his minimal contact with the subject property. He described the subject property as "not the sort of place that one would make as one's primary residence." He identified Hong Kong as his home.

In this affidavit Hassett expressed a common misconception about Florida homestead law: "In late 2007, when we decided to move to Hong

---

[3] See § 196.031(1)(a), Fla. Stat. (2017).

6

Kong, we changed homestead exemption to Florida and subsequent [sic] sold our home in Ohio. That property was our former matrimonial homestead exemption at that time. With the move to Hong Kong and then with only one US property, we called the Florida house the homestead for property tax purposes, since you can do that with one property."

C. The Homestead Exemption Revocation

In 2017, following an investigation, the Property Appraiser revoked Hassett's homestead exemption for the tax year 2007, and denied Hassett's exemption for 2016.[4] In his February 3, 2017 notice of intent to record a lien, it appears the Property Appraiser construed section 196.161(1)(b) to require the *automatic* revocation of the homestead exemption for all tax years subsequent to 2007. This construction of section 196.161(1)(b) resulted in a tax lien not only for tax year 2007, but also for

---

[4] In relevant part, the Property Appraiser's notice of intent to record a lien reads as follows: "This is to advise you that the Property Appraiser has determined for the tax year **2007** that you were not entitled to the previously granted homestead exemption for that year and including **2016**. Therefore, pursuant to Section 196.161(1)(b), Florida Statutes you are hereby notified of the Property Appraiser's intent to record a lien(s) on the . . . [subject property] for the tax years **2007-2008-2009-2010-2011-2012-2013-2014-2015 (does not include current year)** as reflected in the attached lien copies. The reason for the revocation of your homestead is we discovered that the homestead property was not eligible for homestead exemption because you **did not make the property claimed as homestead your permanent residence (ss.196.011, 196.015 and 196.031, F.S.).**" (Emphases in original).

7

tax years 2008 through 2015, notwithstanding that the Property Appraiser, in 2011 and 2013, had conducted investigations of potential homestead exemption violations of the subject property resulting in no revocation determinations.

The notice informed Hassett that the Property Appraiser would be filing tax liens on the subject property, totaling $71,084.60, representing taxes due plus penalties and interest cumulatively from 2007 through 2015. In calculating the tax lien amount, the Property Appraiser assessed the subject property for each tax year at its just value, without regard to either the previously granted, but now revoked, homestead exemption, or the 10% Assessment Limitation. Subsequently, Hassett paid the lien and the 2016 taxes.

D. Procedural History

In February 2017, soon after the notice of revocation, Hassett filed suit against the Property Appraiser, naming the Monroe County Tax Collector as a defendant as well. Hassett's operative complaint, his second amended complaint, named the Department as a defendant due to the state constitutional issues raised in the complaint.[5]

---

[5] See § 194.181(5), Fla. Stat. (2017).

8

Hassett's operative complaint challenged the Property Appraiser's revocation of the subject property's homestead exemption, alleged that the statutes relied upon by the Property Appraiser were unconstitutional as applied to Hassett, and sought damages against the Property Appraiser for imposing a tax lien without complying with the 10% Assessment Limitation.

The trial court conducted a bench trial on August 11 and 12 and September 2 and 30, 2021. During the trial, in addition to challenging the Property Appraiser's homestead exemption revocation for tax year 2007, Hassett attempted to establish that his circumstances had changed after the filing of his 2007 exemption application, and that the Property Appraiser wrongfully revoked the homestead exemption, for tax years subsequent to 2007. Specifically, Hassett tried to adduce evidence that, after 2007, he increased his presence at the subject property and that by 2010, after his retirement from the international accounting firm, he was living there full time.

The trial court, though, upheld the Property Appraiser's objection to Hassett introducing such evidence. The trial court concluded that, notwithstanding the Property Appraiser's revocation of the exemption for tax years 2008 through 2015, Hassett, by availing himself of section 196.011(9)'s automatic renewal process for those tax years, was precluded from introducing any evidence regarding his residency, and otherwise was

9

prohibited from challenging the Property Appraiser's exemption revocation for those years. In sum, the trial court held that circumstances related only to tax year 2007 were relevant and admissible and, if it were established that Hassett had been wrongly granted a homestead exemption for that tax year, by operation of law, Hassett forfeited the exemption for all subsequent years.

On December 14, 2021, the trial court entered the challenged final judgment.  In this detailed judgment, the trial court: (i) found that Hassett had failed to establish that he was entitled to the homestead exemption for tax year 2007;[6] (ii) rejected Hassett's constitutional claims (in which Hassett asserted that the statutes relied upon by the Property Appraiser – allowing the revocation of several years of homestead exemptions without giving Hassett an opportunity to challenge such revocations – are unconstitutional as applied to him); and (iii) upheld the Property Appraiser's revocation of Hassett's homestead exemption. The trial court, however, ruled in favor of Hassett and the Department (which had joined Hassett on this count) on the applicability of the 10% Assessment Limitation. The trial court required the

---

[6] Notwithstanding the trial court's evidentiary ruling that Hassett was precluded from introducing evidence regarding tax years 2008 through 2015, the final judgment contains the following factual finding: "The overwhelming majority of the evidence and testimony demonstrate the property appraiser made the correct determination to revoke and lien [Hassett's] property for the 2007-2016 tax years."

10

Property Appraiser to recalculate the tax lien by applying the 10% Assessment Limitation on the tax years 2008 through 2015.

The Property Appraiser timely appealed the trial court's ruling requiring application of the 10% Assessment Limitation to the calculation of the tax lien, and Hassett, joined by the Department, defended the appeal. Hassett and the Department cross-appealed the trial court's ruling upholding the automatic revocation of Hassett's homestead exemption for the tax years 2008 through 2015, without giving Hassett an opportunity to challenge those revocations.[7, 8] Below, we address each issue in turn.

---

[7] Although Hassett's notice of cross appeal to this Court indicates an appeal of all rulings by the trial court, including adverse rulings on Hassett's constitutional challenges, in Hassett's briefing to this Court he did not renew his arguments that certain statutory provisions are unconstitutional, as applied to him. The Department's briefing also contains no constitutional argument related to the Property Appraiser's revocation of Hassett's homestead exemptions and imposition of liens. Because neither Hassett nor the Department briefed this Court on the constitutional issues Hassett raised below, these issues are deemed abandoned, see Garcia v. Milport Inv. Ltd., 334 So. 3d 734, 737-38 (Fla. 3d DCA 2022), and we express no opinion as to whether the Property Appraiser's application of the relevant statutes to Hassett constituted a constitutional deprivation.

[8] Hassett, not joined by the Department, also cross-appeals the trial court's finding that Hassett failed to meet his burden to establish he was entitled to the homestead exemption for tax year 2007. Without further elaboration, we affirm the trial court's well-reasoned order in this regard, as its findings are supported by ample competent, substantial evidence. See Mitchell v. Higgs, 61 So. 3d 1152, 1154 (Fla. 3d DCA 2011) (affirming the trial court's finding of a lack of homestead eligibility based on competent, substantial evidence).

**II. Analysis[9]**

A.  Whether the 10% Assessment Limitation applies to tax years 2009-2015

Hassett's operative complaint asserted that the Property Appraiser, in violation of Article VII, section 4(g) of the Florida Constitution and section 193.1554(3) of the Florida Statutes, wrongfully refused to apply the 10% Assessment Limitation to tax years 2009 through 2015, resulting in an inflated calculation of Hassett's lien obligation. The Property Appraiser responded by asserting that he properly relied upon The Florida Department of Revenue's rule 12D-8.0064, which provides that, upon revocation of homestead, "the unpaid taxes shall be the taxes on the amount of the difference between the assessed value and the *just value for each year*." Fla. Admin. Code R. 12D-8.0064(3)(d) (2017) (emphasis added). The Property Appraiser argues that this rule requires that each revoked year be calculated based on the property's just value for that year, without regard to the 10% Assessment Limitation.

As noted by the trial court, though, the problem with the Property Appraiser's reliance upon this rule is that the rule predates the adoption of

---

[9] The Court reviews interpretations of constitutional provisions and statutes *de novo*. Zingale v. Powell, 885 So. 2d 277, 280 (Fla. 2004).

the 10% Assessment Limitation, which derives from the Florida Constitution.[10] It is beyond dispute that an administrative rule or statutory provision may not conflict with a constitutional provision. See Garcia v. Andonie, 101 So. 3d 339, 345 (Fla. 2012).

As the trial court correctly concluded:

> [O]nce revocation occurs, the assessment limitation of Art. VII, s. (4)(d) no longer applies to the property. If the other qualifications are met (e.g., residential property of fewer than nine units) then the property automatically becomes subject to Art. VII, s. (4)(g), by operation of law. . . . [T]he fatal flaw in the Appraiser's argument is that it creates an additional class of property not recognized or authorized by the Constitution, i.e., "revoked" property. . . . [T]he Appraiser's position – that the 10% assessment increase cap would never apply in a revocation – contravenes the Florida Constitution and the Florida Statutes, as residential property not subject to the assessment limitations . . . is eligible for the 10% nonhomestead assessment increase cap.

We therefore affirm that portion of the trial court's final judgment requiring the Property Appraiser to recalculate the tax lien consistent with the 10% Assessment Limitation and the requisites of section 193.1554.

---

[10] We note that, in both its briefing to this Court, and at oral argument, the Department commendably concedes that its rule is incongruous with the Florida Constitution and that, when a homestead exemption has been revoked, the 10% Assessment Limitation applies to limit valuations if successive tax years are implicated. We encourage the Department to amend or abrogate its rule.

13

B. <u>Whether Hassett is precluded from challenging the Property Appraiser's revocation of Hassett's homestead exemption for tax years 2008 through 2015</u>

We turn next to Hassett's cross appeal which challenges the trial court's determination that, as a matter of law, Hassett was precluded from challenging the Property Appraiser's revocation of the homestead exemption for tax years 2008 through 2015.

At the outset, we note that the statutes do not expressly contemplate the situation presented here, and there appears to be no case law directly on point. Section 196.011 provides the mechanism for taxpayers to apply for homestead exemptions, while section 196.161 provides for imposition of liens when revocation has occurred. One section deals with the obligations of a taxpayer in applying for an exemption, while the other section prescribes the parameters of a lien upon revocation of an exemption. Neither statute specifically deals with the effect of a property appraiser's revocation of an exemption that has, in subsequent years, been automatically renewed pursuant to section 196.011(9)(a).

It is evident from our review of the trial transcript, though, that the trial court made its determination based on its belief that the subject statutes relied upon by the Property Appraiser are penal in nature:

THE COURT: [T]he property owner cannot rely on the automatic renewal for subsequent years. To do so would have the effect of rewarding dishonesty by minimizing the penalty [for] lack of candor. It is clear from the statute and legislature and of the homestead exemption . . . that any instance of abuse or dishonesty by a taxpayer was intended to be penalized harshly. Reliance on the courtesy of the automatic renewal is misplaced and unwarranted. The taxpayer has been dishonest in their use of the property.

While the homestead exemption statutes are to be strictly construed against the taxpayer, see Haddock v. Carmody, 1 So. 3d 1133, 1137 (Fla. 1st DCA 2009), this canon of construction does not authorize courts to insert provisions into homestead exemption statutes that simply are not there; courts are required to construe statutes consistent with their plain meaning, guided by the text of the statutes. See Prewitt Mgmt. Corp. v. Nikolits, 795 So. 2d 1001, 1005 (Fla. 4th DCA 2001) ("It is a well established principle of Florida law that the plain meaning of statutory language is the paramount consideration of statutory construction."). Against this backdrop, we review the statutes that the Property Appraiser argues preclude Hassett from challenging the Property Appraiser's revocation of Hassett's homestead exemption for tax years 2008 through 2015.

Section 196.161(1)(b) provides statutory authorization for the Property Appraiser to impose a tax lien (including interest and penalties) "upon determination by the property appraiser that for any year or years

within the prior 10 years a person" has wrongfully received an exemption. §

196.161(1)(b), Fla. Stat. (2017). This statute does not limit the ability of a

taxpayer to challenge the revocation for "any year or years" simply because

the subject property is located in a county that has adopted the automatic

exemption renewal expressly authorized by section 196.011(9).

Additionally, section 196.161(1)(b) – allowing for revocation and lien

imposition "upon a determination . . . that for *any year or years* within the

prior 10 years" an exemption has been wrongfully granted – plainly

contemplates that the property appraiser's determination as to any one year

within the ten-year look-back period may be different from its determination

as to another year within this ten-year period. That is, the statute does not

provide for the *automatic* revocation of *all* tax years within the ten-year look-

back period, even if a property appraiser determines that the taxpayer

wrongfully received an exemption for one year within the look-back period.

If, as apparently happened here, a property appraiser does determine that a

taxpayer has wrongfully received a homestead exemption for *each* of the

preceding ten years, we have been cited no statutory provision that outright

would preclude the taxpayer from challenging that determination for all such

tax years.

16

Indeed, while section 196.011(9)(a) places an affirmative duty on the taxpayer to notify the property appraiser "whenever the use of the property or the status or condition of the owner changes so as to change the exempt status of the property," no provision in section 196.011(9) authorizes an automatic, *unchallengeable* forfeiture of the exemption for all tax years, upon a property appraiser's determination, under section 196.161(1)(b), that an exemption has been wrongfully granted.[11]

The Property Appraiser also argues that sections 194.171(2) and (6) of the Florida Statutes precluded the lower court from exercising jurisdiction over Hassett's claims that he was entitled to the homestead exemption for tax years 2008 through 2015. By its plain and unambiguous language, though, section 194.171(2) imposes deadline limitations on an action contesting a tax assessment and does not apply to a challenge, such as Hassett's, to a property appraiser's revocation of a homestead exemption

---

[11] Hassett makes the argument that, because section 196.011(9)(e) required the Property Appraiser to notify Hassett of his intent to deny the automatic renewal of the exemption, and, because the Property Appraiser provided no such notice to Hassett for the tax years 2008 through 2015, the tax liens for those tax years are invalid. We agree with the Property Appraiser, though, that this section applies only when a property appraiser *intends to deny* an automatic renewal for any tax year, and it has no applicability to a situation where a previously issued exemption has been revoked. We note that the Property Appraiser's February 3, 2017 notice met section 196.011(9)(e)'s requirements related to the 2016 tax year.

17

(and related lien imposition) pursuant to section 196.161(1)(b). Again, we have been cited no statutory authority that would restrict a taxpayer's revocation challenge to only one of the years for which the homestead exemption was revoked.

Simply put, we are required to reverse the trial court on this issue because, while the homestead exemption statutes must be construed strictly against the taxpayer – and while the taxpayer has the burden[12] to demonstrate entitlement to a homestead exemption – we find no textual support in the statutory scheme for the trial court's precluding the taxpayer from challenging the property appraiser's exemption revocation for any or all tax years.  Further, there exists no textual support for a construction of the statutes that would authorize, much less require, the automatic, unchallengeable revocation of previously granted homestead exemptions for multiple tax years.

Our reversal of the trial court on this issue is consistent with the line of cases that, with regard to tax assessments, require that "each tax year stands on its own." Crapo, 278 So. 3d at 122 ("The general maxim of 'each year stands on its own' is foundational to the understanding of tax law, and

---

[12] See Crapo v. Acad. For Five Element Acupuncture, Inc., 278 So. 3d 113, 117 (Fla. 1st DCA 2019).

has been extended to the context of tax exemptions and not merely valuations."); Page v. City of Fernandina Beach, 714 So. 2d 1070, 1076 n.5 (Fla. 1st DCA 1998). Construing the statutes in such a way as to require *automatic and unchallengeable forfeitures* of the exemptions, without consideration of the facts and circumstances related to each tax year, thwarts this policy directive.[13]

---

[13] Oddly, the Property Appraiser argues that our decision in Mitchell v. Higgs, 61 So. 3d 1152 (Fla. 3d DCA 2011) supports the trial court's determination that Hassett is precluded from challenging the retroactive exemption revocations in years 2008 through 2015. In Mitchell, the property appraiser, in 2007, revoked the taxpayer's homestead exemption for the 2007 tax year and, also, pursuant to section 196.161's ten-year look-back provision, revoked previously granted homestead exemptions for tax years 1999 through 2006. The taxpayer, Mitchell, filed a lawsuit challenging the revocations and the resulting tax liens. Id. at 1154.

After conducting a bench trial, the trial court in Mitchell upheld the property appraiser's homestead exemption revocation for tax year 2007. But, with regard to exemption revocations for tax years 1999 through 2006, the trial court entered summary judgment for Mitchell, concluding that the property appraiser's retroactive revocation of previously granted exemptions violated the "change in judgment" rule articulated in Underhill v. Edwards, 400 So. 2d 129 (Fla. 5th DCA 1981), and Korash v. Mills, 263 So. 2d 579 (Fla. 1972). Mitchell, 61 So. 3d at 1154-55.

In Mitchell, we affirmed the trial court's upholding of the property appraiser's revocation for tax year 2007 (see footnote 8, *supra*), but we reversed the trial court's summary judgment for Mitchell, concluding that, notwithstanding Underhill and Korasch's "change in judgment" rule, the plain and unambiguous text of section 196.161 provides an express legislative authorization of retroactive homestead exemption revocations. Id. at 1156. Our remand instruction in Mitchell is important: "[T]he final summary judgment in favor of Mitchell for the tax years 1999-2006 is reversed, and

**III. Conclusion**

We affirm the trial court's upholding of the Property Appraiser's revocation of Hassett's homestead exemption and associated lien imposition for tax year 2007. We reverse the trial court's upholding of the Property Appraiser's revocation of Hassett's homestead exemption for tax years 2008 through 2015, and remand for a new trial at which Hassett will have the burden to prove that, for any or all of such tax years, he was entitled to the homestead exemption. We affirm that portion of the trial court's final judgment determining that, any tax lien imposed on the subject property for tax years 2008 through 2015, must be recalculated to apply the 10% Assessment Limitation.

Affirmed in part; reversed in part, with instructions.

---

the case is remanded to the trial court *for fact-finding regarding Mitchell's eligibility for the exemptions during those years*." Id. (emphasis added). Clearly, in Mitchell, we remanded the case to provide the taxpayer the opportunity to meet his burden to establish that (i) he was entitled to the exemption in those years, and (ii) the property appraiser had wrongfully revoked the previously granted exemptions and wrongfully imposed tax liens for those years. We do not read Mitchell to support the Property Appraiser's argument that section 196.161(1)(b) either authorizes or requires a retroactive homestead exemption revocation that is *unchallengeable* by the taxpayer.